UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRYAN S.,[1]

      **Plaintiff,**

v.

KILOLO KIJAKAZI,[2]
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 3:20-cv-11145
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This is an action for review of the final decision of the Commissioner of Social Security that, as of October 18, 2017, Plaintiff Bryan S. was no longer entitled to Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This matter is now before the Court, with the consent of the parties, *see Consent*, ECF No. 16, on *Plaintiff's Memorandum of Law*, ECF No. 22, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25, *Plaintiff's Reply*, ECF No. 26. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

**I.      PROCEDURAL HISTORY**

On May 23, 2002, Plaintiff was found disabled as of April 14, 2000, by reason of "psychosis." R. 69, 120−22. In a decision dated March 20, 2014 ("comparison point decision" or "CPD"), it was determined that Plaintiff's disability continued, noting impairments of bipolar disorder and schizophrenia. R. 502−07. Plaintiff was thereafter notified that benefits would be terminated because a review of his medical records demonstrated that his disabling condition had improved and was no longer disabling as of October 1, 2017. R. 124−28 (cessation notices dated October 17 and 18, 2017, and June 27, 2018), 147−59 (disability hearing officer's decision and notice of termination on reconsideration, both dated June 27, 2018). Plaintiff requested a hearing before an administrative law judge, R. 163−64, and, on March 18, 2019, Administrative Law Judge Jay Marku ("the ALJ") held a hearing at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 95−118. In a decision dated May 8, 2019, the ALJ held that Plaintiff's disability had ended on October 1, 2017, and that he has not beeen disabled since that date. R. 69−79. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 19, 2020. R. 21−26. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 30, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 16.[3] On the same day, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.  LEGAL STANDARD

### A.  Standard of Review

A claimant's entitlement to disability benefits must be reviewed periodically to determine, *inter alia*, whether "there has been any medical improvement" in the disabling impairments. 42 U.S.C. § 423(f)(1)(A); 20 C.F.R. § 404.1594(a). "Medical improvement" is defined as "any decrease in the medical severity" of the claimant's impairments, and is based on "improvements in the symptoms, signs, and/or laboratory findings associated with" the claimant's impairments. 20 C.F.R. § 404.1594(b)(1). A finding of medical improvement will result in the termination of benefits if "it is also shown that [the claimant is] currently able to engage in substantial gainful activity." *Id.* at § 404.1594(b)(3). That determination may be based on all of the claimant's current impairments, not just those present at the time of the most recent favorable determination. *Id.* at § 404.1594(b)(5). Unless it is determined that the claimant remains disabled, the Commissioner "will use the new symptoms, signs and laboratory findings to make an objective assessment of [the claimant's] functional capacity to do basic work activities or residual functional capacity and [ ] will consider [the claimant's] vocational factors." *Id.* To determine whether medical improvement has occurred, the ALJ must "compare the current medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled to the medical severity of that impairment(s) at that time." *Id.* at § 404.1594(b)(7); *see also id.* at § 404.1594(c)(1) (explaining that medical improvement is determined "by *a comparison of prior and current medical evidence* which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)") (emphasis added).

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

5

expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully

6

developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

> **B.** **Sequential Evaluation Process**

In determining whether a claimant remains disabled for purposes of disability insurance benefits, an eight-step sequential evaluation process will be followed. 20 C.F.R. § 404.1594(f)(1)-(8).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, then the inquiry ends because the plaintiff is no longer disabled.

At step two, the ALJ decides whether the plaintiff has an impairment or combination of impairments that meets or equals the severity of an impairment in the Listing of Impairments found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1594(f)(2). If so, then the plaintiff's disability will continue. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ must determine whether there has been medical improvement as defined in 20 C.F.R. § 404.994(b)(1). *Id*. at § 404.1594(f)(3).

At step four, the ALJ must determine whether any medical improvement is related to the claimant's ability to work, *i.e.*, whether there has been an increase in the claimant's residual functional capacity ("RFC") based on the impairments present at the time of the most recent favorable medical determination. *Id*. at § 404.1594(f)(4). If the ALJ resolves that issue in the negative, the ALJ continues to step five and determines whether a specified exception exists. *See id*. at § § 404.1594(f)(5). On the other hand, if the ALJ resolves that issue in the affirmative, or if certain specified exceptions exist, the ALJ must then proceed to step six.

At step six, the ALJ determines whether claimant's current impairments are severe. *Id*. at § 404.1594(f)(6).

At step seven, the ALJ determines the claimant's RFC based on his current impairments and determines whether he can perform his past relevant work. *Id*. at § 404.1594(f)(7). If the claimant can do so, the claimant's entitlement to benefits ends. If the claimant cannot do so, then the ALJ determines at step eight whether there exists in the national economy a significant number of other jobs that the claimant can perform. *Id*. at § 404.1594(f)(8). If the claimant can perform such other work, he will be found to be not disabled and his disability insurance benefits will end. If the claimant cannot do so, his disability continues.

"[O]rdinarily[,] a disability beneficiary meets his or her burden to prove continuing disability by introducing evidence that the underlying condition continues, which in turn gives rise to a presumption of continuing disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1238 (3d Cir. 1983). "Once the burden to come forward has shifted to the [Commissioner], the [Commissioner] must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity" or establish that the initial disability determination was erroneous. *Id* at 1237. "Thus, once the claimant produces evidence of continuing disability, the burden of proof, or more properly the risk of non-persuasion, shifts to the [Commissioner] to produce evidence that the claimant is capable of undertaking gainful activity in order to rebut the presumption of continuing disability." *Keegan v. Heckler*, 744 F.2d 972, 975 (3d Cir. 1984). Finally, "'once having found a disability, the [Commissioner] may not terminate the benefits without substantial evidence to justify so doing.'" *Kuzmin*, 714 F.2d at 1238 (quoting *Miranda v. Sec'y of Health, Educ. and Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). "This will normally consist of current evidence showing that a

8

claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed." *Id*.

### III. ALJ DECISION AND APPELLATE ISSUES

As previously discussed, the March 20, 2014, comparison point decision determined that Plaintiff's disability based on, *inter alia*, impairments of bipolar disorder and schizophrenia had continued. R. 502–07. It was that CPD that the ALJ used in considering whether there has been medical improvement in Plaintiff's condition. R. 71.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 71.

The ALJ also found that medical evidence established that Plaintiff had not developed any additional severe impairments after March 20, 2014, through the date of his decision and that Plaintiff continued to suffer the same severe impairment of schizophrenia that he had suffered on March 20, 2014. *Id.*[4] Since October 1, 2017, the ALJ found, Plaintiff has not suffered an impairment or combination of impairments that met or medically equaled a listed impairment. R. 71–73.

The ALJ further found that there has been medical improvement and that the improvement was related to the Plaintiff's ability to work. R. 73. Although Plaintiff's impairments were severe, *id.*, the ALJ found that, since October 1, 2017, Plaintiff had the RFC to perform a full range of work at all exertional levels with certain non-exertional limitations. R. 73–77.

---

[4] The ALJ does not identify at this point in his decision that Plaintiff also had the severe impairment of bipolar disorder at the time of the CPD. R. 71, 507.

9

The ALJ found that Plaintiff had no past relevant work. R. 77. Relying on the testimony of the vocational expert, however, the ALJ also found that Plaintiff's RFC would permit the performance of a significant number of jobs in the national economy, including such representative jobs as laundry laborer, hand packer, and housekeeping cleaner. R. 78. The ALJ therefore concluded that Plaintiff's disability ended on October 1, 2017, and that Plaintiff has not been disabled since that date. *Id.*

Plaintiff argues that substantial evidence does not support the ALJ's continuing disability review or the RFC determination. *Plaintiff's Memorandum of Law*, ECF No. 22; *Plaintiff's Reply Brief*, ECF No. 26. He asks that the decision of the Commissioner be reversed and remanded for further proceedings. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25.

**IV.    DISCUSSION**

Plaintiff argues, *inter alia*, that the ALJ's continuing disability review determination is not supported by substantial evidence because the ALJ did not consider material evidence, including the March 20, 2014, comparison point decision, when finding that medical improvement had occurred as of October 1, 2017. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 5–8; *Plaintiff's Reply Brief*, ECF No. 26, pp. 1–2. According to Plaintiff, an ALJ must determine whether medical improvement has occurred by comparing the current severity of the claimant's impairments with the severity of those impairments at the time of the CPD. *Plaintiff's Memorandum of Law*, ECF No. 22, p. 6 (citing 20 C.F.R. § 404.1594(a), (b)(1), (7)). Plaintiff

specifically argues that the CPD dated March 20, 2014, did not appear in the administrative record originally filed in this Court and was not listed among the exhibits before the ALJ at the time of his decision, and that the ALJ did not discuss the evidence and determinations contained in the CPD. *Id*. at 6–8 (citing, *inter alia*, R. 80–84). It follows, Plaintiff argues, that without this evidence, the ALJ could not properly make a finding of medical improvement that is supported by substantial evidence. *Id*. at 8.

The Acting Commissioner concedes that the March 20, 2014, CPD documents were "inadvertently omitted from the administrative record" originally filed in this Court, but points out that the supplemental record contains the relevant documents. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25, p. 8 (citing ECF Nos. 15, 20). The Acting Commissioner also notes that the record before the ALJ contained hospital records from March 2014, which reflect Plaintiff's "emergency room treatment for auditory hallucination (Tr. 303-20)." *Id*. The Acting Commissioner therefore takes the position that "[b]ecause the record contains the March 20, 2014 CPD and related evidence (Tr. 303-20, 502-07), this Court may meaningfully review the ALJ's finding that Plaintiff's mental impairment improved as of October 1, 2017." *Id*. Plaintiff replies that the filing of the supplemental record with the CPD in this case does not correct the error alleged by him, *i.e.*, that the ALJ did not have the required information, including the CPD, before him when he issued his decision. *Plaintiff's Reply Brief*, ECF No. 26, pp. 1–2. Plaintiff's arguments are well taken.

As discussed above, in order to determine whether medical improvement has occurred, an ALJ must "compare the current medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled to the medical severity of that impairment(s) at that time." 20 C.F.R.

11

§ 404.1594(b)(7); *see also see also id*. at § 404.1594(c)(1) (explaining that medical improvement is determined "by *a comparison of prior and current medical evidence* which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)") (emphasis added); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 307 (3d Cir. 2012) ("A key part of this analysis [of determining whether medical improvement has occurred] involves comparing the severity of the impairment at the time of the most favorable recent disability determination with the current severity of that impairment.") (citing 20 C.F.R. § 404.1594(b)(7), (c)(1)). "So, when an ALJ fails to compare medical records between a claimant's current impairments and the records used by the ALJ to make an initial disability determination, courts routinely remand the issue back the Commissioner so they can make an adequate comparison." *Chmarney v. Kijakazi*, No. 4:20-CV-1268, 2022 WL 675800, at *6 (M.D. Pa. Mar. 7, 2022) (citations omitted) (remanding where, *inter alia*, the ALJ "clearly did not compare Plaintiff's current medical records with the medical records that were used to formulate" the earlier comparison point decision); *see also Hemingway v. Comm'r of Soc. Sec.*, No. 2:19-cv-18387, 2020 U.S. Dist. LEXIS 242795,[5] *7 (D.N.J. Dec. 23, 2020) (noting that "courts have vacated ALJ decisions that did not adequately compare the record supporting a prior favorable decision with the current record"); *Walters v. Saul*, 452 F. Supp. 3d 164, 177 (M.D. Pa. 2020), *report and recommendation adopted*, No. 1:18-CV-2287, 2020 WL 1531369 (M.D. Pa. Mar. 31, 2020) (remanding action where "[t]he ALJ's decision is devoid of any discussion of medical evidence leading up to the time of the most recent favorable disability decision").

In the case presently before the Court, the supplemental administrative record contained

---

[5] There is no Westlaw citation available for this case.

CPD evidence, including a case analysis that stated as follows: "The beneficiary is a 35 year old man who was last allowed on 8/30/06. New evidence indicates that *clmt has been stable* in a low-stress setting but continues to experience episodes of impairment (*agitation, AH* [auditory hallucinations]), *stays to himself, affect blunted* per PMD. No significant medical improvement." R. 506 (emphasis added). A "CDR Analysis Form" stated that "[m]edical improvement is not established[,]" finding as follows:

| CPD | CURRENT REVIEW |
|---|---|
| CPD Impairments:<br>CPD Signs, symptoms, lab findings:<br>At CPD of 8/30/06, the claimant was found to be disabled due to no significant medical improvement from an earlier allowance 05/23/02 at the ALJ level.<br><br>Dr. Solomon Miskin 07/06 MSE volubility, pressured speech, pressured ideation, flight of ideas, heightened distractibility, racing thoughts[.] | Current Allegations;<br>Current signs, symptoms, lab findings:<br>454 BK bipolar disorder, schizophrenia<br><br>Dr. Titus: 03/14 hearing[] voices[.] |

R. 507.

In his written decision, the ALJ concluded that medical improvement had occurred as of October 1, 2017, explaining as follows:

> **6.    Medical improvement occurred on October 1, 2017[].**
>
> The medical evidence supports a finding that, by October 1, 2017, there had been a decrease in medical severity of the impairment. The claimant's condition of schizophrenia and related symptoms are well-controlled on a medication and therapy regimen that has been consistent for several years. His condition is in partial remission and any limitations in understanding and memory, concentration, persistence, and pace, adaptation, and social functioning are no more than moderate in nature since the cessation date.

R. 73. Nowhere in this discussion of medical improvement does the ALJ compare the evidence

supporting the March 20, 2014, CPD with the current medical record. *See id*. Nor does the ALJ cite to any specific evidence upon which the CPD relied. *Id*. Notably, as Plaintiff points out, the ALJ never cited to the CPD and the CPD itself is not included in the exhibits that were presumably considered by the ALJ. R. 80–84. To the extent that the CPD and related evidence was lost or was missing at the time of the ALJ's decision, the ALJ had the duty to reconstruct the file. 20 C.F.R. § 404.1594(c)(3)(v). The ALJ failed to engage in the requisite comparison of the CPD record with the current record; it is therefore not clear how or why the ALJ concluded that medical improvement had occurred on October 1, 2017. *See* 20 C.F.R. § 404.1594(b)(7), (c)(1); *Hagans*, 694 F.3d at 307; *Chmarney*, 2022 WL 675800, at *6; *Hemingway*, 2020 U.S. Dist. LEXIS 242795, at *10 (remanding action where "the ALJ barely referred to the [earlier comparison point] decision, let alone to the evidence supporting that decision. The ALJ's decision read less like a finding of medical improvement, and more like a finding of no disability in the first instance. A more direct, evidence-based, 'before-and-after' comparison is needed in continuing disability cases"); *cf. Bruno, M v. U.S. Comm'r, Soc. Sec. Admin.*, No. 6:19-CV-00886, 2020 WL 5269741, at *4–5 (W.D. La. Aug. 6, 2020), *report and recommendation adopted sub nom. Bruno v. Soc. Sec. Admin.*, No. 6:19-CV-00886, 2020 WL 5261150 (W.D. La. Sept. 3, 2020) ("The ALJ did not expressly recognize that the CPD is not in the record despite its importance to the determination of medical improvement. It appears that the ALJ did not have the CPD because, while the ALJ references the CPD in her decision, there is no citation to the CPD itself as evidence supporting her findings. Instead, the ALJ relied upon the findings of the Hearing Officer in support of what is alleged to be contained in the CPD, and particularly, the finding of significant medical improvement. Thus, it is unclear how, and upon what evidence, the finding of significant medical improvement was reached. Relevant information as to the severity

of the claimant's impairments at the time of the CPD is presumably in the CPD file, which is necessary for an evaluation of medical improvement.").

The Acting Commissioner urges this Court to affirm the ALJ's decision because the supplemental administrative record contained the CPD evidence and the ALJ considered hospital records from March 2014 that supported the CPD. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25, p. 8. This Court declines the Acting Commissioner's invitation. In crafting Plaintiff's RFC since October 1, 2017,[6] the ALJ spent only four sentences and discussed only a single piece of pre-CPD medical evidence:

> In March 2014, at the CPD, the claimant presented to the hospital emergency room complaining of hearing voices for the past week. He offered a history of one prior hospitalization for similar reasons approximately ten years ago, but that he had been taking his medications since, without problems. He was already prescribed Risperdal and Wellbutrin. He was stabilized and discharged the same day to Family Guidance Clinic, his outpatient provider, for further evaluation. (Exhibit CDR-B3F)[.]"

R. 74. The remainder of the ALJ's discussion addressed medical evidence dated after the CPD. R. 74–76. The ALJ entirely failed to discuss any of the medical evidence generated between 2006 and March 20, 2014, and which supported the CPD. *Id*.; *see also* R. 507 (reflecting that the CPD in this case, dated March 20, 2014, referred to its own comparison point decision from August 30, 2006); *Sam B. R. v. Kijakazi*, No. CIV. 20-5036-JLV, 2021 WL 4324507, at *5

---

[6] The ALJ crafted the following RFC determination:

> After careful consideration of the entire record, the undersigned finds that, since October 1, 2017, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine tasks requiring no more than reasoning level 2, involving no more than occasional contact with the public, coworkers, and supervisors, no working on assembly lines or in teams, and with little change in the work setting or work processes.

R. 73.

(D.S.D. Sept. 23, 2021) ("It is clear from the record the ALJ was not interested in the documents supporting the CPD, the 2010 ALJ decision. . . . Because the ALJ did not consider the complete prior record, as required for a finding of medical improvement, the ALJ's decision is not supported by substantial evidence and is based on the application of an improper legal standard.") (citations omitted).

In addition, the ALJ highlighted evidence post-dating the CPD that reflected that Plaintiff's condition was stable or that his mood was stable, R. 75–76, and relied on that evidence when crafting Plaintiff's RFC. R. 76 ("Treatment records indicated largely normal mental status examinations, and the claimant has been stable on his medication regimen for many years with no auditory or visual hallucinations."). However, as detailed above, the CPD specifically considered, *inter alia*, that Plaintiff "*has been stable* in a low-stress setting but continues to experience episodes of impairment (agitation, AH)" and "Dr. Titus: 03/14 hearing[] voices[.]" R. 506–07 (emphasis added). Because Plaintiff's disability was continued in the CPD in March 2014 notwithstanding his "stable" status, the ALJ should have explained his reliance on that status in the post-CPD medical evidence, but he did not. R. 75–76; *cf. Hemingway*, 2020 U.S. Dist. LEXIS 242795, at *6 (finding that, because a physician's reports were consistent before and after the CPD, "they contradict and do not support any finding of improvement"). In addition, although the ALJ considered Plaintiff's March 2014 emergency room visit, during which he complained of hearing voices, R. 74, nowhere in the decision did the ALJ consider Plaintiff's treatment with John P. Titus, M.D., Plaintiff's treating psychiatrist, who was referenced in the CPD, R. 507, and who has apparently treated Plaintiff since 2005. R. 476 (reflecting that Plaintiff has been a patient of Dr. Titus since February 4, 2005).

In short, for all these reasons, the Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is no longer entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[7]

## V.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the medical record supporting the CPD dated March 20, 2014, and whether medical improvement has occurred, the Court does not consider those assertions.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  July 25, 2022                                          *s/Norah McCann King*
                                                              NORAH McCANN KING
                                                              UNITED STATES MAGISTRATE JUDGE